Entered on Docket
June 15, 2010

GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

FILED

NOT FOR PUBLICATION

JUN 14 2010

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

## UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. NC-09-1300-PaJuKw |
| FRED G. LABANKOFF, | Bk. No. 09-10970 |
| Debtor. | |
| FRED G. LABANKOFF, | |
| Appellant, | |
| v. | **M E M O R A N D U M**[1] |
| UNITED STATES TRUSTEE,[2] | |
| Appellee. | |

Argued and submitted on May 18, 2010
at San Francisco

Filed - June 14, 2010

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable Alan Jaroslovsky, Bankruptcy Judge, Presiding

─────────────────────────────

───────────────────

[1]  This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

[2]  The United States Trustee has not filed a brief or appeared in this appeal.  In addition, although a chapter 7 trustee was appointed when Debtor's case was converted to chapter 7, that trustee is not listed as an appellee and has not appeared.

-1-

1  Before: PAPPAS, JURY and KWAN[3], Bankruptcy Judges

2

3       Chapter 7[4] debtor Fred G. Labankoff ("Debtor") appeals the

4  bankruptcy court's order converting his bankruptcy case from

5  chapter 11 to chapter 7.[5]  We AFFIRM.

6

7                              **FACTS**

8       These facts are reconstructed from the bankruptcy court's

9  docket.[6]

10      Debtor filed a petition for relief under chapter 11 on

11 April 9, 2009.  Debtor asserted in the petition that his debts

12 ─────────────────────────

13      [3]  The Honorable Robert N. Kwan, United States Bankruptcy
   Judge for the Central District of California, sitting by
14 designation.

15      [4]  Unless otherwise indicated, all chapter, section and rule
   references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532 and
16 to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

17      [5]  Appellant's brief contains numerous arguments relating to
   a separate appeal before this Panel concerning the bankruptcy
18 court's decision to abstain from an adversary proceeding,
   Labankoff v. GMAC, (BAP no. NC-09-1294), which we address in a
19 separate Memorandum.  We focus in this Memorandum solely on issues
   relating to the conversion order.
20
   [6]  Debtor did not comply with the Rules relating to
21 bankruptcy appeals.  For example, despite Rules 8009(b)(1)─(8),
   Debtor failed to include the required contents in the excerpts of
22 record.  Transcripts required by Rule 8009(b)(9) were provided by
   Debtor, but only after repeated instructions from the Clerk.
23 Contrary to Rule 8010(a)(1)(A)─(C), Debtor's brief did not include
   page references on its table of contents or table of cases; the
24 brief also included incorrect statements of appellate jurisdiction
   and standards of review. Debtor apparently also chose to
25 disregard BAP Rules 8010(a)(1) and (c)(1) limiting an opening
   brief to 30-pages, double spaced 14-point type; Debtor's brief was
26 34 pages, single spaced, with 12-point type.  While these rule
   violations would ordinarily warrant some response from the Panel,
27 under the circumstances, and in particular since no appellee has
   appeared, the Panel elects to accept and consider Debtor's
28 nonconforming brief.

                              -2-

were primarily consumer debts as defined in § 101(8), and that he
was not a small business debtor as defined in § 101(51D).
Although the schedules are not clear, it appears that Debtor owed
secured creditors $800,000 for two deeds of trust on his residence
and $107,270 in unsecured debts. Debtor's listed assets
consisted of a residence worth $1.5 million and three "pending"
United States Patents "applications" he valued at $5 million.

On May 1, 2009, the bankruptcy court issued a "Chapter 11
Status Order and Notice of Possible Conversion or Dismissal." The
court scheduled the status conference for May 29, 2009, and
directed Debtor to file a written statement before the conference
addressing several questions, including whether the small business
provisions of the Bankruptcy Code should apply in his case. The
bankruptcy court advised Debtor that it may dismiss or convert the
case if cause existed.

Debtor filed a response to the bankruptcy court's order on
May 21, 2009, in which Debtor stated that he had "filed [a
proposed] disclosure statement containing information concerning
assets, liabilities and business affairs of the debtor which we
believe is sufficient to enable a creditor to make an informed
decision about the debtor's plan of reorganization[.]" Debtor
then requested to be treated as a small business debtor because he
was an inventor.

On May 22, 2009, Debtor filed two motions, one seeking
authority to sell his residence, and the other proposing to sell
his rights under the three patent applications. Debtor's motions,
fairly construed, sought blanket authority to sell these
properties on the Debtor's initiative if needed to fund the

-3-

reorganization plan.  No notice of the motions to sell was served
on creditors or other parties.

     The bankruptcy court conducted the status conference on May
29, 2009.  The attorney for the U.S. Trustee and Debtor appeared.
When asked for its position, counsel for the U.S. Trustee
described Debtor's proposal to sell the patent rights as
"illusory," and argued that Debtor lacked sufficient knowledge of
chapter 11 to be able to propose and confirm a reorganization
plan.  Hr'g Tr. 2:20-24 (May 29, 2009).

     At the status hearing, both the bankruptcy court and the
U.S. Trustee observed that Debtor's actions thus far in the
chapter 11 case had been incorrect.  Debtor had filed two motions
to obtain  unlimited authority to sell property of the estate
without complying with the Rules; Debtor had also commenced an
adversary proceeding against secured creditors GMAC Mortgage, LLC,
Homecomings Financial, LLC and ETS Services LLC, apparently not
appreciating that the subject matter of the action was non-core,
and that the bankruptcy court therefore could not enter a final
judgment; and, the court observed, Debtor proposed funding the
plan from the proceeds of present and unfiled lawsuits.  The
bankruptcy court opined that a debtor could not fund a
reorganization plan from future lawsuits.  Hr'g Tr. 4:18-22.

     As a result of the status conference, the bankruptcy court
informed Debtor that his case would be converted to a chapter 7
case within 120 days if Debtor had not confirmed a chapter 11
plan.  Clearly expressing his skepticism about the prospects for
confirmation of a plan, the bankruptcy judge informed Debtor that
"I think there is no way on God's earth that can happen.  But I am

-4-

giving you the time in the hope that you get a lawyer and get some good competent advice." Hr'g Tr. 3:21—4:3. Implementing the comments at the conference, on May 29, 2009, the bankruptcy court entered an order that Debtor's chapter 11 case would be converted to chapter 7 on September 29, 2009 if a plan had not been confirmed by that date. Also on May 29, the bankruptcy court entered orders denying the motions to sell the residence and the patent applications because of Debtor's failure to comply with the Rules.

On August 10, 2009, Debtor submitted his First Proposed Small Business Plan of Reorganization. Debtor's proposed plan[7] states that its purpose is to pay off $14,354 in unsecured debt resulting from expenses related to Debtor's "business of inventing," although the original petition listed unsecured debts in excess of $100,000. Debtor proposed to pay these debts through recoveries from litigation and sale of the patent applications. Only if the litigation proceeds and sale of the patent applications were insufficient would Debtor attempt to sell his residence.

In his brief on appeal, Debtor complains that he was having difficulty complying with the bankruptcy court's order to submit and confirm a chapter 11 plan because of the "bias" of the bankruptcy court, the fact that the principal secured creditor had "defaulted" on its responsibilities by failing to answer Debtor's complaint, and because the bankruptcy court clerks had conspired with the judge to destroy documents and had failed to set hearing

---

[7] The plan states that a disclosure statement is attached, but that statement was not included in the appellate record nor in the bankruptcy court's docket.

-5-

dates in the adversary proceeding.[8]

On September 29, 2009, the bankruptcy court, <u>sua sponte</u>, entered a memorandum and order converting the case from chapter 11 to chapter 7, in reliance upon the May 29 status conference order.

The same day, Debtor filed a timely appeal of the conversion order.

### JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A).  We have appellate jurisdiction under 28 U.S.C. § 158.

### ISSUES

1.   Whether the bankruptcy court abused its discretion in converting Debtor's bankruptcy case from chapter 11 to chapter 7.

2.   Whether the bankruptcy court was biased against Debtor.

### STANDARD OF REVIEW

The bankruptcy court is given "wide discretion" in converting a chapter 11 case to chapter 7.  <u>Greenfield Drive Storage Park v. Cal. Para-Professional Servs., Inc. (In re Greenfield Drive Storage Park)</u>, 207 B.R. 913, 916 (9th Cir. BAP 1997).

---

[8]  Debtor's allegations of judicial bias are discussed below. In our Memorandum in the separate appeal, we review the bankruptcy court's decision in the adversary proceeding, <u>Labankoff v. GMAC</u> (BAP appeal no. NC-09-1048).  In our view, however, events in the adversary proceeding are not relevant to our review of the bankruptcy court's decision to convert the chapter 11 case to chapter 7.

-6-

1    Federal trial court judges are granted broad discretion in

2 supervising proceedings, and a judge's behavior during proceedings

3 justifies reversal if he abuses that discretion by exhibiting

4 bias.  Price v. Kramer, 200 F.3d 1237, 1252 (9th Cir. 2002).

5    In applying an abuse of discretion test, we first "determine

6 de novo whether the [bankruptcy] court identified the correct

7 legal rule to apply to the relief requested."  United States v.

8 Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009).  If the bankruptcy

9 court identified the correct legal rule, we then determine whether

10 its "application of the correct legal standard [to the facts] was

11 (1) illogical, (2)implausible, or (3) without support in

12 inferences that may be drawn from the facts in the record."  Id.

13 (internal quotation marks omitted).  If the bankruptcy court did

14 not identify the correct legal rule, or its application of the

15 correct legal standard to the facts was illogical, implausible, or

16 without support in inferences that may be drawn from the facts in

17 the record, then the bankruptcy court has abused its discretion.

18 Id.

19

20                          **DISCUSSION**

21                             **I.**

22          **The bankruptcy court did not abuse its discretion**
           **in converting Debtor's chapter 11 case to chapter 7.**

23                             A.

24    Section 1112 governs conversion or dismissal of chapter 11

25 cases.  This provision was significantly amended by BAPCPA in

26 2005.  The earlier version of § 1112(b) vested discretion in the

27 bankruptcy court to decide whether to order conversion or

28

                              -7-

dismissal, even if the movant established cause.  The amendment to § 1112(b)(1) requires conversion or dismissal if cause is established "absent unusual circumstances specifically identified by the court that establish that the requested conversion is not in the best interests of creditors and the estate . . . ."

A movant bears the burden of establishing by preponderance of the evidence that cause exists to convert the case from chapter 11 to chapter 7, or to dismiss the case, whichever is in the best interest of creditors and the estate.  In re Pittsfield Weaving Co., 393 B.R. 271, 274 (Bankr. D.N.H. 2008).  When the bankruptcy court acts without a movant, it may rely on the record before it in determining cause.  7 COLLIER ON BANKRUPTCY ¶ 1112.04[4] (Alan J. Resnick & Henry J. Sommer, eds., 16th ed. 2010).

Once cause has been established, under § 1112(b)(2),[9] the

---

[9]  Section 1112(b)(2), which a leading treatise has described as "linguistically difficult," 7 COLLIER ON BANKRUPTCY ¶ 1112.05[2], provides:

> The relief provided in paragraph (1) shall not be granted absent unusual circumstances specifically identified by the court that establish that such relief is not in the best interests of creditors and the estate, if the debtor or another party in interest objects and establishes that--
>
> (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title [11 USCS §§ 1121(e) and 1129(e)], or if such sections do not apply, within a reasonable period of time; and
>
> (B) the grounds for granting such relief include an act or omission of the debtor other than under paragraph (4)(A)--
>
> (i) for which there exists a reasonable justification for the act or omission; and

(continued...)

-8-

burden shifts to the party opposing conversion.  A bankruptcy
court explained the operation of this provision in In re Orbit
Petroleum, Inc., 396 B.R. 145, 148 (Bankr. D.N.M. 2008):

> Once "cause" has been demonstrated, the Court must
> convert or dismiss, unless the Court specifically
> identifies "unusual circumstances . . . that establish
> that such relief is not in the best interest of
> creditors and the estate." 11 U.S.C. § 1112(b)(1).
> However, absent unusual circumstances, the court must
> not convert or dismiss a case if (1) there is a
> reasonable likelihood that a plan will be confirmed
> within a reasonable time, (2) the "cause" for dismissal
> or conversion is something other than a continuing loss
> or diminution of the estate coupled with a lack of
> reasonable likelihood of rehabilitation; and (3) there
> is reasonable justification or excuse for a debtor's act
> or omission and the act or omission will be cured in a
> reasonable time.

Section 1112(b)(4) sets forth a non-exclusive list of
examples of "cause" upon which the bankruptcy court may rely in
ordering conversion.  In this case, after reviewing the status of
this case at a hearing Debtor attended, the bankruptcy court
ordered Debtor to confirm a reorganization plan within 120 days,
i.e., by September 29, 2009.  In the September 29 memorandum
decision, the bankruptcy court found that Debtor had not confirmed
the plan within the time it had specified in its status hearing
order.  This finding is consistent with cause for conversion under
§ 1112(b)(4)(J), which targets a debtor's "failure to file a
disclosure statement, or to file or confirm a plan, within the
time fixed by this title or by order of the court."  See,
In re Sanchez, 2010 Bankr. LEXIS 1322 *8, 2010 WL 1791249 *5

---

[9](...continued)
                    (ii) that will be cured within a
          reasonable period of time fixed by the court.
§ 1112(b)(2).

(Bankr. D.P.R. 2010) (cause exists for conversion if debtor fails to file or confirm a plan within "any time" fixed by the bankruptcy court). In other words, on September 29, because Debtor had not confirmed a plan as ordered, the bankruptcy court clearly had cause under the Code to exercise its discretion in favor of conversion.[10]

In this case, the bankruptcy court had warned Debtor at the status conference that he could not expect to fund a reorganization plan from speculative recoveries from unfiled lawsuits. The court also agreed with the U.S. Trustee's position that Debtor's prospects for generating income from his sale of patent rights was "illusory."[11] Nevertheless, in his proposed plan, and despite the clear admonition of the bankruptcy court at the status conference, Debtor relied primarily on funds from both of those sources to pay creditors. Under these circumstances, the bankruptcy court could conclude that Debtor could not realistically effectuate a plan of reorganization because the proposed funding sources were not available or were illusory.

---

[10] Of course, the Code requires that, with cause, the bankruptcy court either convert or dismiss, whichever is in the best interest of creditors and the bankruptcy estate. The bankruptcy court has discretion to determine whether conversion or dismissal is appropriate. Shulkin Hutton, Inc. v. Treiger (In re Owens), 552 F.3d 958, 960-61 (9th Cir. 2008). Because Debtor does not argue on appeal that the bankruptcy court should have dismissed his case, rather than converting it to a chapter 7 case, we express no opinion on this aspect of the court's decision.

[11] The U.S. Trustee did not appear in this appeal, and so we do not know precisely why the U.S. Trustee considered Debtor's projected patent sales income illusory. However, Debtor refers to the income from sale of "applications" for the patents, so we presume that patents had not been granted by the U.S. Patent Office and, thus, the value and marketability of any possible rights would be conjecture.

-10-

Presumably, even if lawsuit recoveries could ultimately be available, no actions had been filed (except the one against creditors GMAC Mortgage, LLC, Homecomings Financial LLC, and ETS Services LLC that the bankruptcy court was inclined to dismiss on jurisdictional grounds). And assuming that no patents had been granted, Debtor had not shown that rights under the patents could be liquidated without a considerable delay. Because delay in Debtor's access to funds would not advance the interests of the creditors, the bankruptcy court could have converted the bankruptcy case because Debtor could not develop a feasible reorganization plan.

Once cause was established for conversion of Debtor's case based on § 1112(b)(4)(J), the burden shifted to Debtor to show either "unusual circumstances" or the existence of the three mandatory conditions specified in § 1112(b)(2), one of which was a reasonable likelihood that a plan would be confirmed in a reasonable time. Debtor made no showing that there were unusual circumstances presented in his case that should justify not converting the case. In addition, the bankruptcy court determined that there was no reasonable possibility that Debtor could confirm a plan in a reasonable time. As a result, the bankruptcy court properly interpreted and applied the correct legal rule, § 1112(b)(2), and appropriately exercised its discretion in deciding to convert Debtor's case from chapter 11 to chapter 7.

### B.

Besides the allegations of judicial prejudice (addressed below), Debtor objects to the conversion on two grounds. First, Debtor argues that the bankruptcy court may not, on its own

-11-

motion, convert or dismiss a chapter 11 case. For support, Debtor cites frequently to the Second Circuit's opinion in Gusam Restaurant Corp. v. Speciner (In re Gusam Restaurant Corp.), 737 F.2d 274 (2d Cir. 1984). Gusam held that a bankruptcy court could not sua sponte convert a chapter 11 case to chapter 7. Id. at 277. However, Debtor is incorrect in describing this case as binding precedent. It is neither binding nor precedent.

An opinion of another circuit's court of appeals, although perhaps persuasive, is not binding on federal courts in the Ninth Circuit. Moreover, other courts in the Second Circuit have ruled that Gusam is no longer precedential because it was statutorily overruled in 1986 by amendments to § 105(a). See, e.g., In re 1883 Lorraine St. Assocs., 198 B.R. 16, 32 (E.D.N.Y. 1996) (noting that the rule announced in Gusam that a bankruptcy court could not sua sponte convert a chapter 11 case to chapter 7 was not precedent because the 1986 amendments to the Bankruptcy Code added a new sentence to § 105(a): "No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent abuse of process.").

Our court of appeals has held that a chapter 13 case may be converted to chapter 7 by the court sua sponte under its § 105(a) powers. Rosson v. Fitzgerald (In re Rosson), 545 F.3d 764 (9th Cir. 2008) ("Although the statute provides for conversion 'on request of a party . . . or the . . . trustee, . . .' there is no doubt that the bankruptcy court may also convert on its own

-12-

motion. _See_ _id_. § 105(a) ("No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."))." The same rationale would appear to be applicable to conversions from chapter 11 to chapter 7. Indeed, most post-1986 decisions directly addressing conversion from chapter 11 to chapter 7 have held that § 105(a) allows the bankruptcy court to convert a chapter 11 case to chapter 7 on its own motion. _See_, _e.g._, _In re Muntenneau_, 2007 U.S. Dist. Lexis 48233, 2007 WL 1987783 (E.D.N.Y. 2007); _Spencer v. Steinman (In re Argus)_, 206 B.R. 757, 763 (E.D. Pa. 1997); _In re 183 Lorraine Street Assocs._, 198 B.R. 16, 32-33 (E.D.N.Y. 1996); _Pleasant Pointe Apartments, Ltd. v. Kentucky Housing Corp._, 139 B.R. 828, 832 (W.D. Ky. 1992); _In re Starmark Clinics_, 388 B.R. 729, 735 (Bankr. S.D. Tex. 2008); _In re State Street Assocs., L.P._, 348 B.R. 627, 641-42 (Bankr. N.D.N.Y. 2006); _In re A-1 Specialty Gasolines, Inc._, 238 B.R. 876, 878 (Bankr. S.D. Fla. 1999). In addition, the only two published decisions on this issue after the 2005 BAPCPA modifications to § 1112, _Muntenneau_, 2007 U.S. Dist. Lexis 48233 at *8 and _Starmark Clinics_, 388 B.R. at 735, both held that the bankruptcy court could convert from chapter 11 to chapter 7 on its own motion.

C.

Debtor also objects to the bankruptcy court's decision requiring him to confirm a plan within 120 days. Debtor argues

-13-

1  that, as a "small business debtor," he should have been allowed

2  180 days to confirm a plan.

3      In his bankruptcy petition, Debtor checked the boxes

4  confirming that his debts were primarily consumer debts and that

5  he was <u>not</u> a small business debtor.  Debtor's elections had

6  consequences.  Rule 1020(a) provides:

> In a voluntary Chapter 11 case, the debtor shall state
> in the petition whether the debtor is a small business
> debtor. . . . [T]he status of the case as a small
> business case shall be in accordance with the debtor's
> statement under this subdivision, <u>unless and until</u> the
> court enters an order finding that the debtor's
> statement is incorrect.

11  (Emphasis added.)  Although later, in his response to the

12  bankruptcy court's status conference order, Debtor requested that

13  the bankruptcy court treat him as a small business debtor, the

14  bankruptcy court had no grounds to find that Debtor's statements

15  in his petition were incorrect.

16      In his schedules, Debtor listed $800,000 in secured debts

17  related to his residence, which are unquestionably consumer debts.

18  <u>See</u> § 101(8) (consumer debt means debt incurred by an individual

19  primarily for a personal, family, or household purpose); <u>Zolg v.</u>

20  <u>Kelly (In re Kelly)</u>, 841 F.2d 908 (9th Cir. 1988)(home mortgage is

21  a consumer debt unless used to fund a business purpose).  Debtor

22  listed $107,270 in unsecured debt on his petition schedules.

23  Later, in his proposed plan, Debtor acknowledged that only $14,354

24  of his unsecured debt was related to his business of inventing.

25  Thus, between the petition and Debtor's later admissions, the

26  bankruptcy court had no evidence that Debtor was a small business

27  debtor.  Consequently, the bankruptcy court could conclude that

28  his statement on his petition that his debts were primarily

-14-

consumer debts was correct and his statement on the petition that
he was not a small business debtor was not incorrect.

Moreover, even if Debtor were to be treated as a small
business debtor, the 180-day period he refers to in § 1121(e)(1)
prescribes the period during which a small business debtor has the
exclusive right to <u>file</u> a plan; it does not establish the date by
which the debtor must obtain confirmation of the plan.[12]  Of
course, here the bankruptcy court was not concerned with the
exclusivity period for filing a proposed plan.[13]

Exercising its authority to manage cases under § 105,[14] which
the bankruptcy court explicitly invoked in its status conference
order, the bankruptcy court ordered Debtor to obtain confirmation
of a plan within 120 days.  In setting this deadline, the

---

[12]  In addition, the 180-day exclusivity period extends from
the date of the order for relief (<u>i.e.</u>, the petition date). The
120-day confirmation deadline imposed by the bankruptcy court ran
from the date of the status conference order, May 29.  As a
result, the difference in time between the two periods was only
about ten days.

[13]  Indeed, § 1121(e)(2) requires that a plan in a small
business case be filed "not later than 300 days after the order
for relief. . . ."  However, this is the <u>latest</u> date by which the
plan must be filed; nothing in the Code prevents the bankruptcy
court from establishing a shorter deadline for plan filing.

[14]  Section 105(a) provides that "[t]he court may issue any
order, process, or judgment that is necessary or appropriate to
carry out the provisions of this title. No provision of this title
providing for the raising of an issue by a party in interest shall
be construed to preclude the court from, sua sponte, taking any
action or making any determination necessary or appropriate to
enforce or implement court orders or rules, or to prevent an abuse
of process."  Section 105(d) provides, in pertinent part, that the
bankruptcy court "shall hold such status conferences as are
necessary to further the expeditious and economical resolution of
the case" and that the court shall "issue an order at any such
conference prescribing such limitations and conditions as the
court deems appropriate to ensure that the case is handled
expeditiously and economically . . . ."

-15-

1  bankruptcy court was merely performing its statutory duties.  In

2  particular, the Code both instructs the bankruptcy court to

3  conduct status conferences and to issue an order at such

4  conferences in chapter 11 cases which order, among other things,

5  "sets the date by which the debtor . . . shall file a disclosure

6  statement and plan." § 105(d)(2)(A) and (B)(i).  The 120-day

7  period in this case was apparently the bankruptcy court's choice

8  of a period in which he would expect Debtor to either confirm a

9  plan or consult an attorney.  Debtor has not objected in this

10 appeal to the bankruptcy court's exercise of its § 105 powers; he

11 merely complains that the bankruptcy court did not treat him as a

12 small business debtor.  However, Debtor's status as either a small

13 business debtor or a "regular" chapter 11 debtor was irrelevant to

14 the bankruptcy court's ability to enter an appropriate case

15 management order.

16     Given this record, the bankruptcy court did not abuse its

17 discretion in converting Debtor's bankruptcy case from chapter 11

18 to chapter 7.

19                              **II.**

20     **The bankruptcy court was not biased against Debtor.**

21     Debtor alleges that the bankruptcy judge exhibited bias

22 against him.  We disagree.  No evidence or examples of prejudice

23 appear in the transcripts of the hearings or in the court's

24 written documents.  An individual asserting judicial bias has an

25 exceptionally heavy burden and must "overcome a presumption of

26 honesty and integrity in those serving as adjudicators." Withrow

27 v. Larkin, 412 U.S. 35, 47 (1975).

28

                              -16-

1    On the contrary, we find that the comments made by the

2 bankruptcy court at the status hearing show concern and sympathy

3 for a debtor who, attempting to accomplish highly complex legal

4 tasks, clearly lacked the ability to do so:

5    THE COURT:  You [Debtor] asked me to sign two orders.
     You didn't even come close to the procedural
6    requirements. . . .  You filed a lawsuit in this Court.
     The United States Supreme Court decided over 20 years
7    ago for that type of action a Bankruptcy Court has no
     jurisdiction. You've done absolutely nothing right.  I
8    should be dismissing this case today or converting it to
     chapter 7.

9
     I'm going to order the case will be converted to
10   Chapter 7 in 120 days if you haven't confirmed a plan.
     I'm not giving you that time because I think you can
11   confirm a plan.  I think there is no way on God's earth
     that can happen.  But I am giving you the time in the
12   hope that you get a lawyer and get some good competent
     advice.  Otherwise you're just creating expenses for
13   everyone, aggravation for yourself, and disaster is
     looming.  So I have sympathy for you. . . .

14
     You cannot, as a matter of law, base your
15   reorganization on the idea that you're going to win a
     lawsuit. . . .  So the idea that you can fund a
16   reorganization [by a future lawsuit] is just beyond the
     pale of possibility.  So all I can do, and I'm doing
17   this mainly for my own conscience, is tell you you're
     headed for disaster and hope that you take my advice and
18   get a bankruptcy lawyer.

19 Hr'g Tr. 3:11—4:22.

20    In short, the bankruptcy court observed that Debtor had "done

21 nothing right," filing motions, an adversary proceeding, and a

22 plan that lacked support under the law.  Although the court

23 apparently considered  dismissing or converting the case

24 immediately, it instead opted to give Debtor four months either to

25 confirm a plan or obtain legal advice.

26    The bankruptcy court's position in this last respect is

27 unassailable.  While it is true that Debtor has the right to

28 represent himself, <u>Logan v. Zimmerman Brush Co.</u>, 455 U.S. 422, 437

                                -17-

1    (1982), and that the bankruptcy court must construe his pro se

2    pleadings liberally, Haines v. Kerner, 404 U.S. 519, 520-21

3    (1972), "[t]he right of self-representation is not a license to

4    abuse the dignity of the courtroom.  Neither is it a license not

5    to comply with relevant rules of procedural and substantive law."

6    Faretta v. Cal., 422 U.S. 806, 834 n.46 (1975) (emphasis added);

7    McKaskle v. Wiggins, 465 U.S. 168, 173 (1984) (self-representation

8    is conditioned on party's ability and willingness to abide by

9    rules of procedure and courtroom protocol);  see also Eagle Eye

10   Fishing Corp. v. U.S. Dep't of Commerce, 20 F.3d 503, 506

11   (1st Cir. 1994) (although criminal cases, Faretta and McKaskle are

12   applicable in civil proceedings);  In re Kleinman, 136 B.R. 69, 71

13   (Bankr. S.D.N.Y. 1991) (Faretta's requirement that self-

14   represented party comply with rules of procedure applies in

15   bankruptcy proceedings).  Although the bankruptcy court could not

16   require Debtor to obtain counsel (which did not occur in this

17   bankruptcy case)[15], the court should make Debtor aware "of the

18   dangers of self-representation, so that the record will establish

19   that 'he knows what he is doing and his choice is made with eyes

20   open.'"  Faretta, 422 U.S. at 835.[16]

21

22

23   [15]   The bankruptcy court consistently used the phrases "the
     hope that you get a lawyer and get some good competent advice" and
24   "the hope that you take my advice."  Hr'g Tr. 3:25—4:1, 4:21—22.

25   [16]   On a related note, Debtor complains that the court staff
     was biased against pro se litigants and would not schedule hearing
26   dates for him.  As the court stated in its conversion order, that
     was a responsibility of Debtor.  It is a well established
27   principle that court staff are not to engage in the practice of
     law, and are not required "to take over chores for a pro se
28   defendant that would normally be attended to by trained counsel as
     a matter of course."  McKaskle, 465 U.S. at 183-84.

-18-

1    In other words, the bankruptcy court's observations were

2  consistent with its duty to open Debtor's eyes to the reality that

3  his lack of legal knowledge, as demonstrated by his multiple

4  mistakes made thus far in the case, would inevitably lead to

5  expenses and aggravation for all concerned, and that "disaster

6  [was] looming."  None of these comments are indicative of bias.

7  Rather, they signal the bankruptcy court's sympathetic concern for

8  Debtor, and its willingness to exercise its discretion by

9  affording Debtor time to either propose and confirm a proper plan,

10  or to at least secure competent legal advice.

11    Moreover, although the bankruptcy court used firm language

12  in admonishing Debtor for his failure to comply with bankruptcy

13  procedure and the Rules, in general, comments made by a court in

14  the course of judicial proceedings are rarely sufficient to

15  establish bias requiring recusal.  Pau v. Yosemite Park & Curry

16  Co., 928 F.2d 880, 885 (9th Cir. 1991) (district court's "gruff"

17  demeanor was not sufficient to establish bias); United States v.

18  Conforte, 624 F.2d 869, 881 (9th Cir. 1980) (court's comments on

19  insufficiency of evidence before completion of evidentiary hearing

20  insufficient to find bias and require recusal).  Instead, a

21  finding of judicial bias must stem from some personal interest in

22  the case or an extrajudicial source.  Liteky v. United States,

23  510 U.S. 540, 552-53 (1994).

24    The "extrajudicial source" rule is implicated when a court's

25  bias originates outside the courtroom.  United States v. Grinnell

26  Corp., 384 U.S. 563, 583 (1966) (explaining that the "alleged bias

27  and prejudice to be disqualifying must stem from an extrajudicial

28  source and result in an opinion on the merits on some basis other

-19-

than what the judge learned from his participation in the case."); United States v. Bray, 546 F.2d 851, 857 (10th Cir. 1976) ("unjudicious" remarks such as referring to counsel's comments as ridiculous, or describing a witness as pathetic are not extrajudicial, but "reflected the judge's attitude and reactions to specific incidents occurring at trial").

There is no evidence in the record before us that the bankruptcy judge had any personal interest, financial or otherwise, in this case.  There is also no indication in the record that the bankruptcy judge's opinions expressed in the transcripts or written documents were based on any information or events other than those originating in the bankruptcy court proceedings.

Therefore, to succeed, Debtor's claim of judicial bias must fall within a narrow exception to the rule that bias arise either personally or extrajudicially: the so-called "pervasive bias" exception.  The United States Supreme Court instructs that "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." Liteky, 510 U.S. at 555 (emphasis added).  As one treatise explains:

> This pervasive bias exception to the extrajudicial source factor arises when a judge's favorable or unfavorable disposition toward a party, although stemming solely from the facts adduced or the events occurring at trial, nonetheless becomes so extreme as to indicate the judge's clear inability to render fair judgment.  However, the exception is construed narrowly; bias stemming solely from facts gleaned during judicial

-20-

<u>proceedings must be particularly strong in order to
merit recusal.</u>

12 MOORE'S FED. PRAC.- CIV. § 63.21[5] (Matthew Bender, 3d ed. 2007)
(emphasis added); <u>accord</u>, <u>In re Huntington Commons Assocs.</u>,
21 F.3d 157, 158 (7th Cir. 1994) (judge is not required to be
impervious to impressions about litigants; impatience,
admonishments to defendant, adverse rulings, and vague references
to possible predisposition are not remotely sufficient to meet
requirement of deep-seated and unequivocal antagonism that would
render fair judgment impossible).

　　We have carefully examined the record in this appeal and
find no evidence of any "deep-seated antagonism" shown by the
bankruptcy judge against Debtor.  On the contrary, the bankruptcy
court in effect determined that Debtor was not capable of
confirming a plan at the status conference on May 29, 2009.  At
that conference, the court stated that it should convert the case
immediately.  However, the court indicated that its conscience
required it to give Debtor additional time to seek advice from a
qualified bankruptcy counsel, so the court allowed Debtor an
additional 120 days to seek that advice and/or to try to confirm a
plan.[17]  This act of discretion by the bankruptcy court is not
consistent with a pattern of "deep-seated antagonism" against
Debtor.

　　Debtor has not shown that the bankruptcy court was biased
against him.

---

　　[17]  To be clear, while the bankruptcy court was skeptical
about Debtor's prospects for success without at least advice from
a qualified chapter 11 attorney, the court never mandated that he
engage counsel.  Debtor was free, however unwise, to proceed <u>pro
se</u>, which he obviously decided to do, albeit with poor results.

-21-

**CONCLUSION**

We AFFIRM the order of the bankruptcy court converting the case to a chapter 7 case.

-22-